UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LONNIE HARRIS,

    Plaintiff,

vs.

EDWARD ALVES, *et al.*,

    Defendants.

NO. CV-06-5068-RHW

**ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff's Motion for Discovery (Ct. Rec. 96), Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 103), Plaintiff's Motion to Stay (Ct. Rec. 110), Defendant Keever's Motion for Summary Judgment (Ct. Rec. 116), and the State Defendants' Motion for Summary Judgment (Ct. Rec. 121). The State Defendants include Messrs. Alves, Fisher, Kuntz, and Uttecht. These motions were heard without oral argument.

## BACKGROUND

Mr. Harris filed his Complaint on September 7, 2006, and he filed his Amended Complaint on December 27, 2006. The Court ordered the Amended Complaint served on January 11, 2007 (Ct. Rec. 18). He alleges religious discrimination and retaliation at the Washington State Penitentiary under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* Specifically, he asserts that State Defendant Fisher and Defendant Keever conspired to violate his rights under the First and Fourteenth Amendments, and that the State Defendants violated his rights under the RLUIPA,

by not allowing him to pray during a computer class and by conspiring together to change his work schedule such that a deprivation of his rights occurred. He is proceeding *pro se* and *in forma pauperis*. Mr. Harris seeks declaratory and injunctive relief, as well as monetary damages. When he filed his Amended Complaint, Mr. Harris was incarcerated at the Washington State Penitentiary. He was subsequently transferred to Coyote Ridge Corrections Center, then to Airway Heights Correction Center, and then to Pierce County Detention and Corrections Center, where he is currently incarcerated.

## DISCUSSION

### I. Motion to Stay

Plaintiff moves the Court to stay this proceeding pending resolution of his "access to court issues against P.C.D.C.C." (Ct. Rec. 110). Plaintiff alleges that the Pierce County Detention and Corrections Center ("PCDCC") has withheld legal materials, denied him legal photocopy services, and denied him legal mail postage. He notes that "it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) (citation omitted). Prisoners do have a constitutional right of access to the court, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), and this right includes a component encompassing the supplies and services needed to actually prepare and file court papers. *See Gluth v. Kangas*, 951 F.2d 1504, 1509 (9th Cir. 1991). However, the Court makes no judgment as to the merits of Plaintiff's claim that his access to the courts is being curtailed.

In response, the State Defendants (Alves, Fisher, Kuntz, and Uttecht) and Defendant Keever oppose the motion to stay because it is "unreasonable and unnecessary." Defendants note that Plaintiff has had more than one year to develop his case, he has conducted extensive discovery, and he has filed a motion for partial summary judgment against Defendants Fisher and Keever. They submit that Plaintiff has fully exercised his right to conduct discovery, and that Defendants

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 2

have gone out of their way to ensure Plaintiff's legal property was returned to him at their expense when he was transferred from Airway Heights to PCDCC. They maintain that they have no control over Plaintiff's access to legal services, and that they would be unfairly prejudiced by an unnecessary and potentially lengthy stay due to Plaintiff's placement at PCDCC. Defendants argue that Plaintiff would not be prejudiced by a denial of his motion to stay, and that if he requires additional time to respond to or to file a particular motion, he may request it.

On March 24, 2008, Plaintiff filed a letter inquiring as to the status of this motion (Ct. Rec. 132). He states he has filed suit against PCDCC for denying legal copies and that he was awaiting a decision on a motion for a temporary restraining order. He remarked that he still had issues with his access to the courts in the form of funds for legal copies and for postage.

The Court denies Plaintiff's motion to stay. The Court is aware that Plaintiff did not file a memorandum supporting his motion for partial summary judgment, nor did he file a response to Defendants' motions for summary judgment. However, Plaintiff has filed documents with the Court since those motions were filed, so his access to this Court and these proceedings has not been cut off. The Court finds Plaintiff has had ample time and opportunity to develop his case, and a stay is not necessary or appropriate at this time.

**II.    Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves the Court for partial summary judgment as to the liability of Defendants Fisher and Keever. He did not file a supporting memorandum or any supporting evidence. Defendants oppose this motion relying on the fact that Plaintiff has filed nothing to establish a factual or legal basis for his motion. In the absence of any legal or factual basis, the Court denies Plaintiff's motion.

**III.   Defendants' Motions for Summary Judgment**

Defendant Keever and the State Defendants independently move the Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 3

to dismiss Plaintiff's Amended Complaint.

### A. *Pro Se* Litigant

Because Plaintiff is proceeding *pro se*, the Court will construe his claims for relief liberally. *Ortez v. Washington County,* 88 F.3d 804, 807 (9th Cir. 1996). "The allegations of a *pro se* complaint, however inartfully pleaded, should be held to less stringent standards than formal pleadings drafted by lawyers." *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1987) (internal quotations omitted).

Plaintiff has not filed any response to the pending motions for summary judgment. However, the Court may consider the facts as alleged in his Amended Complaint when determining whether there exist genuine issues of material fact because Plaintiff signed his Amended Complaint and declared the facts as stated were "true and correct." *See Winterrowd v. Nelson*, 480 F.3d 1181, 1183 n.3 (9th Cir. 2007) (considering facts presented within *pro se* plaintiff's legal briefs in opposition to motion for summary judgment where plaintiff exposed himself to prosecution for perjury for any deliberately false factual statements in briefs; noting "we give pro se litigants greater latitude as to the format of their presentation"). Also included as an attachment to the State Defendants' motion are portions of Plaintiff's deposition testimony, which essentially corroborate his Amended Complaint.

### B. Summary Judgment Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 4

of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed.R.Civ.Pro. 56(e)) (emphasis in original opinion) (internal citations omitted).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris*, – U.S. –, –, 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**C.    Facts**

These facts are taken from both motions for summary judgment and from Plaintiff's Amended Complaint.

At all times relevant to this matter, Plaintiff Lonnie Harris was incarcerated in the custody of the Washington Department of Corrections (DOC) and housed at the Washington State Penitentiary (WSP) in Walla Walla, Washington.

Walla Walla Community College (WWCC) offers computer courses to offenders housed at WSP so that they can receive an Information Technology Certificate (ITC) upon successful completion of the program. The ITC program is

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 5

voluntary and free to offenders. The Walla Walla Community College Foundation ("Foundation" or WWCCF) is a non-profit public foundation that raises money for scholarships for WWCC and to purchase property for donation to WWCC. It is not a component of WWCC, nor is it a part of the Washington state government. Defendant Ms. Keever was hired by WWCCF as Index Editor in October 2005, and she has remained in that position since then. She was not employed by WWCC or the DOC at any time material to this law suit.

The WWCCF entered into an Interagency Agreement with DOC in 2005 that provided for offenders housed at WSP to assist WWCCF in constructing an historical index of the local newspaper. The Agreement provided that inmates working on the Index Project would be under Ms. Keever's supervision, although she remained an employee of WWCCF, and the inmates remained "employees" of DOC.

Public prayer at WSP is governed by the Administrative Bulletin, WSP 560.200, which states the following:

> Inmates may pray silently, by themselves, in public areas (i.e., recreation yard, dining room) as long as they do not disrupt others. Inmate workers will be permitted to pray on the job if it does not conflict with their duties. Inmate workers may pray silently during their breaks as long as they do not disrupt others.

State Defendants submit that educational classes are not among the "public areas" mentioned in the policy quoted above, and that instead they are "for instructors to teach and for students to listen, learn, and apply and/or practice what they have been taught." The State Defendants assert that "[i]f an offender stops doing his class work and leaves his desk in order to pray, the prayer is in conflict with the offender's duties while in the classroom. If the prayer is noticeable by the instructors or other students, it is disruptive to the learning environment."

State Defendants submit that offenders taking classes may pray silently and non-disruptively at their desks; they may pray during an approved break time; they may arrange to pray in the corridor or rotunda outside the classroom; they may

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 6

1  pray before or after class; or they may arrange their class schedule so that it does
2  not conflict with their prayer schedule.  Prison classrooms at WSP are inside the
3  prison, and State Defendants assert that prison security and discipline must be
4  maintained at all times while offenders are in the classroom.  State Defendants aver
5  that if discipline is not maintained within the classroom the security of the
6  classroom and the prison may be impaired.

7        Defendant Wallace Fisher is employed by Walla Walla Community College
8  as a full-time instructor, and his primary teaching assignment has been at WSP.  He
9  teaches courses in the ITC program and classes for the Advanced Certificate
10 Program.  Because the classroom is inside the prison, the teachers (Mr. Fisher
11 included) are responsible for attendance, discipline, and security for DOC in
12 addition to their teaching responsibilities.  Mr. Fisher keeps logs and records of
13 conversations and actions of students who may be disruptive in class or who may
14 present an attitude that causes concern.  Plaintiff was enrolled in the ITC program
15 in 2006, and he was a student in Mr. Fisher's classes.

16       On May 22, 2006, Mr. Fisher observed Plaintiff go to the back of the
17 classroom and begin to pray.  Plaintiff states that he did four "units" of prayer,
18 each unit consisting of standing, bowing, standing again, prostrating, sitting,
19 prostrating again, then standing.  Plaintiff submits it took him about three minutes
20 to complete his four units of prayer.  Plaintiff had been a student in Mr. Fisher's
21 classroom for about one year prior to May 22, 2006, and Mr. Fisher states he had
22 never observed him go to the back of the classroom to pray or pray silently at his
23 computer during that time.  Mr. Fisher admits that he would have had trouble
24 telling if Plaintiff prayed silently at his computer due to the arrangement of the
25 classroom, but he is certain Plaintiff never left his desk to go to the back of the
26 room to pray before May 2006.  Plaintiff states that he had engaged in this
27 behavior in the same manner ("praying quitely [sic] by himself in the class") for at
28 least eight months prior to May 2006, with custody knowledge.

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR
SUMMARY JUDGMENT * 7

Mr. Fisher did not speak to Plaintiff about his actions on May 22, 2006, but the next morning he met with his supervisor, Mr. Alves,[1] and told him about what he had observed. Mr. Alves stated that Plaintiff's actions were considered a disruption of class and that it would be appropriate for Mr. Fisher to tell Plaintiff that if he needed to pray openly in that manner, it must be done outside the classroom in a "public area." Mr. Alves provided Mr. Fisher with some options to give Plaintiff if he were to openly pray during class again, including praying before coming to class, even if it meant arriving a few minutes late; praying in the rotunda outside the classroom; or dropping the class and signing up for one at a different time.

On May 23, 2006, Plaintiff entered the classroom shortly after 1:00 p.m., and soon after arriving he stood up and went to the back of the room to pray, as he had the day before. After Plaintiff finished praying and returned to his computer, Mr. Fisher sat down at the desk beside Plaintiff and told him he had observed Plaintiff leave his desk to pray, that his prayer in this manner was a disruption in the class, and that he could not pray in this manner in the classroom during class. Plaintiff responded that he had a right to pray wherever he wanted and he demanded to see the policy that forbade him the right to pray in the classroom. Fisher states that he told Plaintiff that he did not have the policy, but Plaintiff could go see Mr. Alves for more information, and he told Plaintiff his options as outlined above. About 15 minutes later, Mr. Alves called the classroom and asked Mr. Fisher to send Plaintiff to the office of the Correctional Housing Unit Manager Alan Kuntz, and Mr. Fisher escorted Plaintiff there as directed. Fisher states that he left at this time, but Plaintiff insists he was present for the duration of the meeting.

---

[1] In addition to being an education supervisor at WSP, Mr. Alves was also the chairman of the Walla Walla Indexing Committee, which implemented the Index Project at WSP. He supervised Ms. Keever as well as Mr. Fisher.

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 8

1    At this meeting between Plaintiff, Mr. Alves, Allen Kuntz, Linda Belanger, Fred Warneka, Rebecca Gibson, and Fisher, they spoke about Plaintiff "not doing his work." Plaintiff alleges Alves told him that Mr. Fisher did not want him to pray in his classroom, and that Plaintiff then asked him to what policy or law he was referring. State Defendants allege that Plaintiff claimed he could pray any time or any where, but Alves explained that was not the function of the classroom, and that if Plaintiff wished to pray at the time he was scheduled to be in class, they could alter his class schedule.

At the meeting, Plaintiff explained his prayer schedule and told them that he had been praying in class for eight months. Plaintiff submits he is required by his religion to pray five times per day, and that two of those prayer times are in the afternoon. Plaintiff states he has a window of about one and one-half hours during which he must say each prayer, although it appears there are ideal times for each prayer. The parties discussed the DOC policy regarding prayer, and, according to Plaintiff, Alves then told him that if he wanted to be in computer classes he could not pray. Plaintiff was scheduled to be in class at 1:00 p.m., and Defendants submit he agreed to change his schedule so he would attend class at 2:00 p.m. and be able to pray at 1:00 p.m. Mr. Alves documented the informal meeting and considered the matter closed, but Plaintiff states that he filed a grievance but was told it was "ungrievable" and that it was "over." Plaintiff did not change his class schedule.

During the summer quarter, which began on June 19, 2006, ITC classes were offered in the morning and evening only, and not in the afternoon. The morning classes were most popular, and there was a waiting list to get into those classes which Mr. Alves and Ms. Gleason maintained. Plaintiff did not register for the late morning classes for the summer quarter before the quarter began; instead he registered for a class from 8:00 to 9:00 a.m. and for evening classes.

State Defendants say that Mr. Fisher anticipated that Plaintiff may want to

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 9

register for morning classes, but that he couldn't because of a conflict with his job schedule. Mr. Fisher recalls Ms. Gleason telling him she had informed Ms. Keever that the morning computer classes were full, that there was a waiting list, and that Plaintiff's release date was such that he would be able to finish his certificate by taking the class in the fall quarter (Ms. Gleason does not distinctly remember this conversation). On June 19, 2006, the first day of the summer quarter, Plaintiff asked Mr. Fisher to put his name on the waiting list, and Mr. Fisher did so. However, the waiting list was for people who were available for immediate placement in the class. Due to his work schedule, Plaintiff was not available, so his name was removed from the list.

On June 26, 2006, Plaintiff asked Mr. Fisher where he stood on the waiting list, and Mr. Fisher told him he had been removed from the list because of his job. Plaintiff began working with the Index Project on February 6, 2006, and he worked twelve and one-half hours per week, from 9:00 a.m. to 11:30 a.m. daily. According to Ms. Keever, in June or early July 2006, Plaintiff approached her and asked to move his work time to the afternoon session. Ms. Keever initially told Plaintiff that this would not be a problem. Plaintiff thereafter went back to Mr. Fisher and said that Ms. Keever had agreed to change his work schedule.

It was after this conversation that Mr. Fisher went to speak to Ms. Keever about Plaintiff's schedule. Defendant Fisher asked Ms. Keever not to change Plaintiff's schedule. Neither Ms. Keever nor Mr. Fisher recall discussing or mentioning Plaintiff's religious practices or beliefs at that time. Ms. Keever was not aware that Plaintiff was a practicing Muslim, and she had never observed him praying. Ms. Keever insists that Mr. Fisher did not discuss with her any problems or discipline issues, and that she only later learned that Mr. Fisher had issues with Plaintiff's conduct in class.

Although Ms. Keever initially told Plaintiff he could change his work schedule, after her discussion with Mr. Fisher, she changed her mind and told

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 10

Plaintiff that his work schedule would not be changed. Ms. Keever insists that her decision had nothing to do with Plaintiff's religious practices or beliefs. In his Complaint, Plaintiff states that Ms. Keever changed her mind about his schedule right after her meeting with Mr. Fisher, and that when he asked her why she would not move his schedule, she responded that her "hands were tied" and suggested Plaintiff appeal the decision to Alves. It appears from the Amended Complaint that Plaintiff infers from the timing of their discussion and the change of decision that Ms. Keever changed her mind due to Mr. Fisher's issues with Plaintiff's religious practices in Fisher's class. Mr. Fisher asserts that he only discussed the wait list for the morning classes and that Plaintiff would be able to complete his ITC requirements in the fall quarter. He states that Ms. Keever told him during their discussion that she had forgotten about the conflict with class schedules and Plaintiff's release date, but that she would "take care of it."

The State Defendants submit that Plaintiff believes Mr. Fisher told Ms. Keever that he did not want Plaintiff to take any more computer classes, and that Fisher's actions were discriminatory because he did not treat other Indexers the same way. All Defendants submit that Plaintiff's right to exercise his religion was not impacted by his summer quarter ITC class or his Index Project work schedule. Ms. Keever states that Plaintiff infers a discriminatory purpose on her part because she initially agreed to let him change his work schedule and then, after meeting with Mr. Fisher, changed her mind. State Defendants assert Plaintiff was not removed from the waiting list for a discriminatory reason, but instead because he was unavailable for classes due to his work schedule.

At some point in late June or early July 2006, after Ms. Keever did not change his work schedule, Plaintiff approached Mr. Alves about changing his work schedule so he could be placed on the waiting list for the morning ITC classes. Mr. Alves was away from the institution for a few weeks after this conversation, but he looked into the matter and wrote a memorandum to Plaintiff on July 21, 2006,

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 11

about one month later.  Alves explained that Ms. Keever was responsible for determining who worked which shift, that Plaintiff was already enrolled in more than the average number of classes for the summer quarter, that he would be placed on the waiting list when his schedule allowed it, and that the list was long.  Alves told Plaintiff that "We continue to go out of our way to make accommodations, based upon your requests.  You need to be aware that you will be treated, as much as possible, the same as every other student. . . ."  Alves also informed Plaintiff that, with his scheduled release date, he would have time to complete his ITC certificate during the fall quarter.

In late July 2006, Plaintiff filed a grievance for not being permitted to enroll in the morning classes in which he alleged Fisher and Keever discriminated against him because of his religion and implied that his right to free exercise was being violated.  Plaintiff's grievance referenced Alves' memorandum from May 23, 2006, in which Alves permitted Plaintiff to change classes from 1:00 to 2:00 to accommodate his prayer schedule.  Plaintiff's suggested remedy in this July grievance was to place him in morning classes immediately.  Alves investigated Plaintiff's grievance and found that Plaintiff was being accommodated.  Plaintiff states that the grievance investigator ruled that Mr. Fisher's actions were motivated by Plaintiff's religious preference and that Fisher had no legitimate "penological interest or employment duty or delegated responsibility to justify his actions of interference."

Plaintiff did not enroll in any morning classes during the summer quarter of 2006, and he took his last ITC class in the fall.  He failed that class, but he appealed his grade and received his ITC certificate.  Mr. Alves fired Plaintiff from the Index Project on September 11, 2006.

**D.   Analysis**

      **1.   Section 1983 Claim**

Section 1983 creates a cause of action against any person who, acting under

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 12

color of state law, violates the constitutional rights of another person. 42 U.S.C. § 1983; *Mabe v. San Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101, 1106 (9th Cir. 2001). To succeed on a § 1983 claim, Plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived him of a constitutional right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). In this case, Plaintiff asserts § 1983 claims for violations of the Free Exercise Clause of the First Amendment and of the Equal Protection Clause of the Fourteenth Amendment, and he alleges a conspiracy to violate his civil rights under 42 U.S.C. § 1985. Plaintiff's alleged RLUIPA claim is an independent cause of action under 42 U.S.C. § 2000cc-2(a).

Defendant Keever asks the Court to grant her motion for summary judgment for two alternative reasons: (1) because Plaintiff's right to exercise his religion freely was not violated, he was not the subject of impermissible discrimination, and there was no conspiracy to deprive him of his constitutional rights; and (2) because Defendant Keever at no time was acting under color of state law, and Plaintiff cannot establish a conspiracy between her and the State Defendants. State Defendants assert that Plaintiff has not alleged a deprivation of his constitutional rights. Because the Court agrees that Plaintiff has failed to allege a deprivation of his constitutional rights, it does not reach the state actor question.

### a. Free Exercise

First, Plaintiff alleges State Defendants violated his First Amendment right to free exercise of religion. "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court in *Turner* set forth four factors to balance in determining whether a prison regulation is reasonably related to legitimate penological interests:

> (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";

> (2) whether there are "alternative means of exercising the right that remain open to prison inmates";
> (3) whether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally"; and
> (4) whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

*Id.* at 89-90 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

Defendants all submit that Plaintiff "must show the [defendant] burdened the practice of [his] religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). However, the portion of this holding that requires the conduct be "mandated by [a prisoner's] faith" has since been rejected. *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). Instead, "it is the sincerity of his belief rather than its centrality that is relevant to the free exercise inquiry." *Id.* at 884. In this case, Plaintiff's faith's requirement to pray five times per day is both central to his belief and sincere.

Defendants submit that his ability to pray was not infringed because he was allowed to pray before class started, after class, between classes, or during class time outside the classroom in the rotunda. However, assuming the Free Exercise Clause is implicated, the Court shall go through an analysis of the *Turner* factors.

The first *Turner* factor requires the Court to determine whether there was a legitimate penological interest that is rationally related to the regulation and, specifically, Defendants' enforcement of the regulation to require Plaintiff not to pray in the classroom during class. State Defendants submit their policy was reasonably related to the penological interest of prison security. They assert that allowing prayer during classroom instructional times is disruptive to the other students and would detrimentally impact the learning environment. Additionally, they state that the necessity for maintaining order in a prison classroom is much greater than in classrooms outside the prison due to the inherent security concerns in a prison environment. State Defendants also submit that they have a legitimate

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 14

governmental interest in ensuring that prisoners who are given the opportunity to take college level courses while in prison use classroom instructional time for class work.

Certainly security is a legitimate penological interest. *See Washington v. Harper*, 494 U.S. 210, 225 (1990). Additionally, the Supreme Court has held that even universities have the right "to exclude First Amendment activities that violate reasonable campus rules or substantially interfere with the opportunity of other students to obtain an education." *Widmar v. Vincent*, 454 U.S. 263, 276-77 (1981). Defendants attest that Plaintiff's prayer was disruptive to the classroom environment, and that they offered Plaintiff several options to exercise his religious beliefs outside of class. The Court finds the avoidance of disruption in the classroom was a legitimate penological interest, and that this interest was rationally related to Defendants' enforcement of their policy, *i.e.*, not permitting Plaintiff to pray during class time in the classroom. This factor weighs in the State Defendants' favor.

The second *Turner* factor requires the Court to consider whether Plaintiff "has 'alternative means by which he can practice his religion' or is 'denied all means of religious expression.'" *Shakur*, 514 F.3d at 886 (citation omitted). It is undisputed that Plaintiff "retained the ability to participate in other significant rituals and ceremonies of [his] faith," *id.* (citation omitted), in that he could pray at other times and in other areas. Additionally, the Court notes that the class in question was one hour long, and it finds that a limited restriction on Plaintiff's right to pray during this short time period is not a heavy burden on Plaintiff's religious practices. Therefore, this factor also weighs in favor of the State Defendants.

The third *Turner* factor is the "impact [the] accommodation . . . will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Permitting Plaintiff to pray during class, as opposed to outside of class or silently

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 15

1  at his desk, impacts the other students in the classroom by disrupting their work,
2  and it impacts the teachers and guards by heightening security concerns.  This
3  *Turner* factor weighs in State Defendants' favor as well.
4       The fourth *Turner* factor requires the Court "to consider whether 'there are
5  ready alternatives to the prison's current policy that would accommodate [Plaintiff]
6  at de minimis cost to the prison.'  The 'existence of obvious, easy alternatives may
7  be evidence that the regulation is not reasonable, but is an exaggerated response to
8  prison concerns.'" *Id.* at 887 (internal citations omitted).  State Defendants'
9  current policy already permits alternatives, such as praying outside the classroom,
10 praying silently at a desk, or praying before or after class.  Further accommodation
11 is not necessary to ensure Plaintiff's right to Free Exercise is not violated.
12      All of the *Turner* factors, therefore, weigh in favor of a finding that the
13 disputed prison regulation is reasonably related to legitimate penological interests.
14 The Court finds that Plaintiff has not alleged a constitutional violation of his Free
15 Exercise rights, and it grants summary judgment on this claim.

### b.     Equal Protection

17      Plaintiff also alleges an equal protection claim against State Defendants and
18 Ms. Keever.  He asserts they intentionally discriminated against him on the basis of
19 his religion by conspiring to deny him the right to change his work schedule and to
20 take certain educational classes.
21      The Equal Protection Clause of the Fourteenth Amendment requires the
22 State to treat all similarly situated people equally. *Shakur*, 514 F.3d at 891 (citing
23 *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)).  In the
24 context of prisoners and their religious beliefs, "the Equal Protection Clause
25 entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable
26 to the opportunity afforded fellow prisoners who adhere to conventional religious
27 precepts.'" *Id.* (citation omitted).  Plaintiff cannot succeed if the difference
28 between Defendants' treatment of him and their treatment of inmates who practice

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR
SUMMARY JUDGMENT * 16

other religions is reasonably related to legitimate penological interests. *See id.* Additionally, an equal protection claim under § 1983 must allege *intentional* discrimination on the basis of membership in a protected class. *See Sischo-Nownejad v. Merced Cmty. College Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991), *overruled on other grounds*.

Plaintiff alleges that Ms. Keever permitted other Index Project employees to change their work schedules freely, and that she and Mr. Fisher decided not to let Plaintiff alter his schedule on the basis of his religion, thus treating him differently because of his faith. Plaintiff does not allege that Ms. Keever and Mr. Fisher's actions denied him a "reasonable opportunity" to pursue his faith, however. Defendants submit Plaintiff was originally removed from the class waiting list because of the conflict with his work schedule, a reason unrelated to his religious practices or preference. Defendants further state that he was not permitted to change his work schedule because of the long wait list for the morning classes and because they knew that Plaintiff would be able to complete his ITC classes during the fall quarter. They assert their decision regarding Plaintiff's work schedule had nothing to do with Plaintiff's religious preference. Defendants maintain that Plaintiff was actually seeking preferential treatment due to his religious beliefs and practices, and that he was attempting to deceive and manipulate staff into placing him in the desirable morning classes.

Plaintiff has failed to raise a genuine issue of material fact relating to Defendants' refusal to change his work schedule. The Court cannot infer intentional discrimination on the part of Defendants from the evidence presented, and Defendants have presented a legitimate reason for removing Plaintiff from the wait list and for their decision not to change his work schedule. Therefore, the Court grants Defendants summary judgment on this claim.

  **2.  42 U.S.C. § 1985: Conspiracy to Deprive Plaintiff of Civil Rights**

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 17

A claim for conspiracy to deprive a plaintiff of his civil rights is properly brought under 42 U.S.C. § 1985. A civil rights conspiracy claim includes four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Keenan v. Allan*, 889 F.Supp. 1320, 1364 (E.D. Wash. 1995) (quoting *Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983)). For the second element, a plaintiff is required to identify a legally protected right and to "demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). Additionally, Plaintiff must show an agreement or "meeting of the minds" by Defendants to violate his constitutional rights. *Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989) (citation omitted).

The Court finds that Plaintiff has not demonstrated a deprivation of his legally protected rights, so it grants Defendants summary judgment on Plaintiff's conspiracy claim.

### 3.    RLUIPA Claim

RLUIPA[2] mandates a stricter standard of review for prison regulations that

---

[2] The main section of RLUIPA provides the following:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person---
   (1) is in furtherance of a compelling governmental interest; and
   (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 18

burden the free exercise of religion than the reasonableness standard outlined above under *Turner*. *Shakur*, 514 F.3d at 888. The enhanced standards set forth in RLUIPA "disallows policies that impose 'a substantial burden on . . . religious exercise' unless the burden 'furthers "a compelling governmental interest," and does so by "the least restrictive means."'" *Alvarez*, 518 F.3d at 1156 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005) (quoting 42 U.S.C. § 2000cc-1(a))). Under RLUIPA, prison officials bear the burden of establishing that the restriction challenged is the "least restrictive alternative to achieve" a compelling governmental interest. *Id.* Prison officials must demonstrate that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999.

Defendants note that a RLUIPA plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." *Id.*, at 994. "[A] burden is substantial under RLUIPA when the state denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur*, 514 F.3d at 888 (internal quotation marks and citation omitted). Defendants contend that Plaintiff has failed to provide evidence that his exercise of religion was substantially burdened, and they point to the fact that Plaintiff was registered for more hours of class than most inmates, and that they accommodated him by permitting him to change his class schedule.

As the Court stated above, the facts show that Plaintiff's exercise of religion was not substantially burdened. He admitted that his prayer schedule permitted prayer within a certain time frame, and it is undisputed that, had State Defendants not given him any option other than praying before or after his 1:00 class, he would have been able to pray within that window. Considering the other options offered, including praying silently at his desk and praying outside the classroom in

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 19

the rotunda, along with the short duration of the class, this Court finds Plaintiff's right to exercise his religion freely was not substantially burdened, and that summary judgment is appropriate on Plaintiff's RLUIPA claim.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Discovery (Ct. Rec. 96) is **DENIED as moot**.

2. Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 103) is **DENIED**.

3. Plaintiff's Motion to Stay (Ct. Rec. 110) is **DENIED**.

4. Defendant Keever's Motion for Summary Judgment (Ct. Rec. 116), and the State Defendants' Motion for Summary Judgment (Ct. Rec. 121) are **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and to furnish copies to Plaintiff and to defense counsel, to enter judgment for Defendants, and to **close the file**.

**DATED** this 19th day of May, 2008.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2006\Harris\SJ2.ord.wpd

ORDER DENYING MOTION TO STAY, GRANTING MOTIONS FOR SUMMARY JUDGMENT * 20